Good morning. Scott Sims for the plaintiffs and the appellants. I'd like to reserve four minutes. All right. Plaintiffs in this case allege the defendant's violated and continue to violate a provision of the California Civil Code that's intended to benefit both pharmacies and consumers. What the provision does is it makes it a violation for the defendants to assist in processing prescription drug claims unless they first perform or obtain a survey and distribute that survey to their clients. And that survey must be distributed and updated every two years. The California Supreme Court has held that this statute can be easily described as having a public purpose. Now, underlying this appeal is a question that I think both sides need to answer. That question is as follows. What happens if this Court affirms, and after this Court affirms, defendants continue to violate the statute and plaintiff files a new lawsuit for new violations of the statute? This plaintiff or some other plaintiff? This plaintiff. What happens if these plaintiffs file a new lawsuit for new violations of the statute after this appeal? Are they barred by issue preclusion? If the answer to that question is yes, that a new lawsuit would be barred by issue preclusion, these three plaintiffs are the only three pharmacies in the entire state of California for which this statute would be unconstitutional. For everyone else, it would be constitutional. These are the only three plaintiffs who went to state court and sought a relief at state court and lost in 2007. And that decision was accorded preclusive value by the federal court, right? So they had a chance to join the other plaintiffs in California, but they took a risk, didn't they, by starting litigation? Well, Your Honor, first of all, they had no choice but to start other litigation because otherwise the statute of limitations would have begun to run on continued violations. But you're correct that they went to state court, and they went to state court so that the statute wouldn't run on those continued violations since the original dismissal at the start of this case, way back in around 2002, 2003, was on Article III standing grounds, and Article III doesn't apply in state court. But these would be the only plaintiffs for whom the statute is unconstitutional. That gets to the Restatement 70 adopted by the California courts, which I'll get to in a second. But if the answer to the question I posed is that plaintiffs would not be barred if they filed a new lawsuit for new violations, then there's no basis here to find that the post-Bradley violations, as we described them in our brief meeting, violations to the statute that took place after the judgment in the state court action. There would be no basis to find that those violations are barred here. Now, under ca- I have a preliminary question. Why aren't your claim and issue preclusion arguments waived on appeal because you didn't raise them in the district court? Well, first of all, they were raised in the district court. First, the public interest exception was specifically raised in the district court and discussed in the district court's order with respect to the unequal application of the laws in this continuing violations issue. That also was specifically raised in the district court. The district court's order discusses the Lewis-Storrs case, which is the first case in California that adopted Section 70 of the Restatement. And I can read a couple of quotes with respect to the continuing violations. At supplemental excerpts of Record 77, it was argued that if the motion was ruled against plaintiffs, that they would be subject to different standards going forward, meaning subject to different standards than all the other pharmacies in the state. It had an oral argument on the motion for summary judgment at excerpts of Record 162. It was also specifically argued that if plaintiffs were precluded, they would be, quote, the only three of the 2,500 people who would never get a ruling, meaning a ruling on the merits of their claims. So of course, they could not have raised the arguments in 2007, but their failure to raise them in a motion for reconsideration to the district court at any point in the four years since the California Supreme Court answered the en banc Ninth Circuit's certified question, why doesn't that constitute waiver? Well, so first of all, as to reconsideration, Your Honor, the district court's decision in 2007 was premised on the notion that the statute was constitutional. The district court had already found the statute was constitutional, and it had already found that the state court was wrong in holding it was unconstitutional. That didn't matter as far as issue of preclusion, does it? That's exactly, Your Honor. The district court didn't think it mattered that the statute was unconstitutional. So when the California Supreme Court later agreed with the district court's ruling that the statute was unconstitutional, that didn't change anything as it related to the district court's analysis. The district court had already decided the motion on the assumption and the explicit finding that the statute was constitutional. So when the Beeman decision comes down from the California Supreme Court, it merely reaffirmed what the district court had already assumed in ruling on the motion. So there was really nothing to reconsider because the facts were the same as what the district court had concluded. That said, if it was required to be raised, the plaintiffs specifically did bring the issue to the district court's attention. Now, they didn't file a specific, quote, unquote, motion for reconsideration, but they brought it to the court's attention. And that was done. I'll get you the site for that in a second. But in addition to that, the court, of course, knew about the Beeman decision because after this court certified it to the California Supreme Court, it routed back through the Ninth Circuit and there was a remand order. So it's not as though the district court wasn't aware of Beeman and it was brought up in a Rule 26F report and the case is cited by the defense for the proposition that you need to file a motion for reconsideration. Don't actually say that. They never actually say you have to file a motion for reconsideration. What they say is that you should bring any change in the law to the attention of the district court. And this was brought to the attention of the district court. But, again, the ruling didn't hinge on the constitutionality or unconstitutionality of the statute. And for that reason, there was really no reason to move for reconsideration because the law is what she had already assumed the law was as it related to constitutionality. Now, Section 70 of the restatement deals specifically with instances like this where there is litigation on an issue of law between two parties. There are new violations of here, a statute, and whether or not that can be I'd like to actually read Section 70 of the restatement. It states, The determination of a question of law by a judgment in an action is not conclusive between the parties in a subsequent action on a different cause of action, even though both causes of action arose out of the same subject matter or transaction. If it would be unjust to one of the parties or to third persons to apply one rule of law in subsequent actions between the same parties and to apply a different rule of law between other persons. In other words, even if you lost before, if it would be an unequal administration of the laws in a future case to apply issue preclusion, it doesn't apply. And the best application of that here is found in the California Court of Appeals decision in Thain v. City of Palo Alto, which we cited in the briefs. What happened in Thain was that a city had adopted a weed ordinance related to growing weeds on your property. The plaintiff was assessed the fine for violating the weed ordinance. He challenged the fine. He claimed that the city's ordinance was unconstitutional. He lost. The court said that the ordinance was constitutional. In another tax year, he's still growing weeds on his property. He gets assessed a new fine. In other words, a new violation. He challenges the second fine. He says the ordinance is unconstitutional. And the California Court of Appeals addressed whether or not his loss in the first case precluded him contesting the constitutionality of the ordinance in the second case. And what the California Court of Appeals said, relying on Section 70 of the Restatement of Judgments, is that it did not preclude him. That in the second case, he could challenge the constitutionality of the ordinance, even though he had lost that issue in his first case. And, in fact, when they held that, they went on to say that the court was right in the first case. They held, again, that it was constitutional. So it's not as though his ability to challenge it hinged on whether or not the first court was right or wrong as to constitutionality. Instead, it hinged on the fact that it would be unfair and not consistent with California law to apply it in both cases. The court said, quote, ''Appellant would be bound by the ordinance and its notice provisions would be valid and effective against him, even though other property owners might successfully object to the validity of the ordinance and prevent the impact of its procedures upon their property. Therefore, we feel that implicit in our review of this case is the necessity of considering whether the ordinance is valid and constitutional on its face and whether the provisions for notice contained in it conform to due process.'' What do you do with the Slater case from California? Assuming that we agree with you that your arguments are not waived, why doesn't the Supreme Court's California decision not really do this appeal? Because Slater doesn't deal with the unequal application of the laws. It doesn't deal with Section 70 of the restatement. So there's two different doctrines in California, both of which are being raised here. One is the public interest exception to issue preclusion that's discussed in the briefs. The second is called various things at different points in time, but it's the unequal administration of the law. The law is going to be applied differently here to plaintiffs than to others, and that it's a pure question of law. And so Slater does not in any way abrogate whether or not the unequal application of the law's exception applies. And in fact, although not specifically citing the Section 70 of the restatement, the same concept is discussed in the Rutherford case, which is discussed in the briefs, which is from 1987 and well postdates Slater. And it's also pointed out in the FEV case, which is a 2017 case, Slater has never overruled Greenfield, and there's never been any case, nor am I aware of any case, that overrules the holdings of the California Supreme Court in both Lewis Storrs and the City of San Fernando case, both of which explicitly adopt Section 70 of the restatement. Now, I'd like to spend the last couple minutes of my time before reserving the rest. Well, the time shown is your total time. Okay. Well, then, very quickly, Your Honor, with respect to the standard of review, we did submit a 28J letter over the weekend. This issue here is a pure issue of law. The facts below were undisputed. The district court's order specifically states it's being decided based upon undisputed facts. There's no dispute here that California law applies since it's a state court judgment. And as the cases we've cited say, under California law, the judge has no discretion in whether or not issue preclusion applies. There is no discretion. It's a pure issue of law. It's basically undisputed record issue of law, and therefore, the standard of review is here de novo. During the four years between 2014 and 2018, your three plaintiffs made no attempt to be substituted in for the two class representatives finally found to be ineligible. Why should we allow you now to go back and do that? Well, I don't know exactly what you mean, Your Honor, with respect to substituted in, but they had been dismissed from the case. They had lost the case on an issue in 2007. So I'm not aware of any authority that you could substitute back in for a case, essentially file a motion to intervene, I think is what you're suggesting, when you'd already lost the case. If you're referencing class certification, class certification is not an issue on this appeal. These plaintiffs have their own personal claims on behalf of themselves. Whatever impact there may or may not be on class certification would be an issue for the district court if this court were to reverse. Thank you. Thank you, counsel. Good morning, Your Honors. May it please the Court, Chris Chorba of Gibson, Dun & Crutcher on behalf of the appellees. This case is nearly 18 years old. It's now on its third trip to this court. But setting aside the procedural complexities of this case, it presents a very straightforward case to apply settled rules of collateral estoppel. While the federal actions in Beamon were on appeal to this court for the very first time, the three appellants that are before you today separated themselves out and pursued the final judgment, a claim, all the way to final judgment in state court. Mr. Sims just referenced how they had to do that because the statute of limitations were about to expire. Well, why didn't all five of the plaintiffs do that? It's because there was very tactical use of state and federal fora. Now, there's nothing in the law to prevent them to do that. But by doing so, they accepted the risk that one of these cases would proceed to final judgment, and that is precisely what happened in the Bradley case. There are two grounds for affirming the judgment in this case, two very straightforward grounds. First, we argue that this is a very clear case of waiver. At no point in the district court, once it was remanded in April of 2014 until final judgment last year, did appellants come forward and say to Judge Phillips, to Chief Judge Phillips, we're here and you should consider our claims. At no point did they do that. And, in fact, we had substitution motions where the two remaining plaintiffs, the two that had remained in federal court and had not gone to state court, had passed away. Their heirs and representatives were brought forward as class reps. Those claims were ultimately rejected at class certification, and those were the claims that led to a terminating sanctions award that actually brings us here today. That was the final judgment. Indeed, not only did these appellants not come forward, there was actually an attempt by counsel to bring forward yet a brand-new class representative. What do you mean by coming forward? What should they have done to have come forward? Your Honor, anything. And it does not – Tell me exactly what you think a reasonable plaintiff in similar circumstances would have done. Well, Your Honor, I'll give you four examples. Number one, they could have filed a Rule 54b motion. Number two, they could have filed a local Rule 7-18 motion for reconsideration. Number three, they could have filed a motion under Rule 59e to alter or amend the judgment. Or, finally, under Rule 60b-6, they could have filed a motion for relief from a final judgment or order. Your Honor, they did none of these things. The only thing in the record that is before you today is a passing reference in a Rule 26f report where they claim that they have the right to basically resume and proceed to pursue their claims. There was never any argument for any of the exceptions under race judicata. At no point did they bring any motion. It cannot be the case that it's sufficient to just have a passing reference in a Rule 26f joint report to abrogate these really important and subtle rules of race judicata. At any point in time, and that's why I was bringing up Mr. Bodel and his pharmacy, Raincroft's Pharmacy, after the terminating sanctions award and, indeed, before this Rule 26f report, they actually, former counsel, although one of the firms remains involved here, but the former lawyers that were leading this action, actually brought forward a brand-new plaintiff who hadn't appeared in either the state or the federal actions and said, okay, we can cure the deficiencies with class certification with this brand-new plaintiff. So counsel skipped over the appellants that are here before you today. So it's an even clearer case of waiver. It's an even clearer case for applying the rules of race judicata and collateral estoppel because at no point did they come forward. District judges can't be expected to divine from a Rule 26f motion the types of very, very serious legal issues that are presented to this Court. It can't be the case that on appeal, nearly 12 years later, we're relitigating something that happened in 2007. And that's the fundamental problem. Counsel, does your same argument apply to what's been labeled post-Bradley claims? It does, Your Honor. Why? And the Slater case answers that exact question. That's a decision from our Supreme Court of California where you basically had a passenger who was killed in an automobile accident and attempted to bring a claim under the guest statute. In Lawsuit No. 1, the guest statute was ruled unconstitutional. Later, in a separate action, the Supreme Court reversed and upheld the guest statute. So plaintiffs came forward again. The same plaintiffs from Lawsuit No. 1 came forward and basically said, we get to relitigate this claim all over again. But if there are intervening violations after the decision comes down, why should race judicata apply to those? Well, Your Honor, to the extent we're addressing the continuing violations theory, Judge Phillips actually addressed that in her 2007 ruling. Back then, the appellants and the former plaintiffs actually argued that there were continuing violations. But remember, in 2007, we were before Judge Phillips on summary judgment. We were the moving parties, the defendants. It was incumbent on the then plaintiffs to come forward with evidence to rebut that. What did we have? All we had were conclusory allegations in a declaration, which are demonstrably insufficient for the reasons we've explained in our brief, saying there were continuing violations. We then rebutted that, and we showed that virtually all, certainly my clients, had actually performed studies, and there were no continuing violations. There's a reference in page 21 of the statute. But what about after all the litigation is over? In that, in this, in the pre-Bradley, what we're framing the pre-Bradley litigation, and then there are violations, not a continuing violations, but new and different violations. Would race judicata apply to those? It would, Your Honor, but again, that issue was ripe for determination in 2007. Just answer my question. If we assume that there are new violations, would race judicata apply to those? If there were new violations, and they were brand-new violations that occurred in, let's say, 2018, and they were different in kind from the ones that were alleged in 2007, there might be an argument there. But your answer rests on the fact that they would have to be new and different violations. Well, it might. And, Your Honor, I need to be clear. Judge Phillips decided this on issue preclusion, which has additional elements than claim preclusion. There might be arguments. You know, there was a discussion of the Thame line of cases, completely distinguishable here. There were very different claims in that case. They involved, it involved, you know, one claim involved abatement. There was a completely different claim in the second case. So you didn't have the same claim being brought in each case. So that is not what we have here. But in your ‑‑ I'm just trying to understand your position. Sure. You're saying that if the statute is violated post-judgment, there is, the race judicata bars those claims. If, Your Honor, and this is why I'm trying to be careful, because I think the hypothetical that you're postulating is a brand-new and distinct violation from the one ‑‑ Of the statute. It's just, it's a violation of the same statute, but it takes place post-judgment. But, Your Honor, that is, what I'm trying to say is that is exactly what we litigated. This is, this and the public interest exception were the only two issues that were actually presented to Judge Phillips when we were deciding the collateral estoppel motion. And your argument was ‑‑ I'm not arguing anything. I'm sorry. I'm asking you a question. I apologize, Your Honor. Your hypothetical is precisely what we litigated before Judge Phillips in 2007. And she specifically concluded that there was insufficient evidence of continuing violations. So let me be clear. Appellant's argument, I'm trying to answer your question. I'm not talking about continuing violations, though. You're not answering my question. Okay. She decided on the issue of whether or not there were continuing violations. Yes, Your Honor. My question was, if there is a clear violation of the statute post-judgment, is it your position that Ray Strudicato would bar that? In this case, yes. And let me explain why. Because that allegation, even if it was dated in 2019, is the exact same allegation that was raised and decided before her in 2007. So you characterize that as another offshoot of the continuing violation theory. Exactly, Your Honor. And let me analogize it to the Slater case. Again, much more tragic circumstances. There are no tragic circumstances here at all, other than our clients having been subjected to this continuing litigation. But you have there someone actually died. And the argument was, well, the California Supreme Court changed the law. We have to be able to be heard on that. So it wasn't quite a situation of continuing violations, but it was a situation where someone came forward and said, the law has changed on us. We now have to have an opportunity to basically litigate these claims, for which the statute hasn't run, on this new decision from the California Supreme Court. And the court said, no, you can't do that. It was remarkable to hear Mr. Sims actually suggest, in answering Judge Nelson's question, that the Supreme Court in Slater did not consider the inequities, did not consider the fact that certain plaintiffs might be treated differently. In fact, it did expressly do that. At 15 Cal 3rd, at page 797, and it's a lengthy excerpt, forgive me, but I'd like to read it because I think it addresses all of these issues. The court held, it cannot be denied that judicial or legislative action, which results in the overturning of established legal principles, often leads to seemingly arbitrary and unwarranted distinctions in the treatment accorded similarly situated parties. And then it continues, the consistent application of the traditional principle that final judgments, even erroneous ones, are a bar to further proceedings based on the same cause of action, is necessary to the well-ordered functioning of the judicial process. It should not be impaired for the benefit of particular plaintiffs, regardless of the sympathy their plight may arise in a specific case. We dispute that there's any sympathy for appellants who had a full and fair opportunity, having made the strategic decision to pursue their claims in Bradley to final judgment. We dispute that there's any sympathy. But our Supreme Court has addressed this exact issue, and it stated that you cannot rely on that. Yes, they're right. They are the only three appellants and the only three pharmacies in the state who are prohibited from pursuing these claims. But that's not because they were deprived an opportunity to actually litigate those claims. They did. And they made that strategic decision. And when you file parallel actions, one of the risks you undertake is that one of them will proceed to final judgment. Counsel, the reason I'm having some difficulty with your argument is, say, for instance, in the Title VII arena, if a person brings a lawsuit for discrimination on the basis of race, because of an employment action taken, and that is denied, and then a subsequent action is taken, they're not barred because of the ruling in the prior action from going forward. So I'm having some difficulty reconciling that with your argument. And, Your Honor, I very much appreciate the clarification because now I understand where you're coming from. The hypothetical that you just gave is very different because you said it's a different instance of discrimination. Now, they may be connected. It may be for, I'll just make an example, a racial slur, and it's the same racial slur but it's two separate instances. In that hypothetical, the rules of race, judicata, and collateral estoppel, again, just based on the limited facts we have in this hypothetical, it would not be barred. But let me change it for you. And why is this different? Before you change it, why is this different than what they're arguing? That's what I was going to do, Your Honor. If it were the same incident in your hypothetical and all they were doing is saying, well, the law now changed on us, we get an opportunity now. Let's say, for example, there was a decision by the Supreme Court just this week on an administrative exhaustive requirement. Now we get to relitigate that same instance. And this is why, and I'll try again. I know I wasn't addressing it earlier. In 2007, the exact same argument that's being raised today as a post-Bradley violation, a brand-new violation, they call it, was exactly where we were in 2007. By 2007, most of the defendants, including my clients, had performed fee studies. They had complied with the statute. So it was incumbent on them, in carrying their burden to oppose summary judgment, to come forward and in Your Honor's hypothetical say, this is now a new incident, different from the one that was actually litigated and finally decided before. They didn't do that. So the arguments that are now being raised in this appeal are the exact same arguments that were presented in 2007, and they didn't carry their evidentiary burden in opposing summary judgment. And Your Honor, it's critically important, because when we were on remand for those four years, there was evidence in the record. I took the depositions of the substitute plaintiffs. I showed them the study. One of the reasons Judge Phillips found them to be inadequate was they couldn't tell me what was wrong with the studies. We performed the studies that when you launched this lawsuit, you contended that we didn't conduct. Now we've done them. What's wrong? And this is another reason why, Your Honor, you should decide this appeal on the basis of waiver, because in your hypothetical, if those were the arguments presented to Judge Phillips, we would have rebutted them. I would have had an evidentiary record to cite to you so we weren't discussing hypotheticals, where I could say, see, this is the exact same argument that was presented to you in 2007. This is why we shouldn't and can't be in a situation where we're essentially litigating a motion for reconsideration for the first time before the appellate court. So, again, we would respectfully submit that you decide this on the basis of waiver. Let me just briefly, in my seconds that remain, address the manifest injustice exception. It's really the principal exception to rules of res judicata that they rely upon in their briefs, both for the pre- and post-Bradley violations. First, waived. At no point was this discussed, raised whatsoever in the district court. Second, as the Slater court found this, it's not even clear that this exception is valid. It's of, quote, doubtful validity and has been, quote, severely criticized. This court has never relied on the manifest injustice exception. Moreover, the Slater court, the city of Sacramento court, and the FEV case upon which they rely explicitly distinguish the manifest injustice exception and hold that it does not apply when the only basis for invoking it is a so-called change in the law. Yet that is exactly what we have here. As the court in Zepi held, if you were to endorse this theory and permit this exception to rules of collateral estoppel, it would, quote, emasculate, if not wipe out, the doctrine of res judicata. Thank you. Thank you, Your Honor. Every time you assist in filling a prescription, it's a new violation of the statute. The study has to be distributed every two years. So if this was the Slater case, this would be a second car accident. It's a totally new violation. Slater only deals with it's the same exact violation. That's not the case here. With respect to summary judgment, they move for summary judgment on a single ground. They move for summary judgment on the ground of preclusion. They didn't move on the grounds that they hadn't continued to violate the statute. If they wanted to move on grounds that they didn't continue to violate the statute, they had to put in evidence. You have to tell the other side that this is the ground I'm moving on and here is my evidence. If they would have done that, we would have rebutted it. Whether or not they continue to violate the statute has never been litigated. Never once. The only time that has ever come up was when they took the depositions of the people who are not plaintiffs here, and those people supposedly didn't understand enough about the case. But whether or not they've done the studies has never been litigated. We believe that most of the defendants didn't do a study at all, and that with respect to any that did, that the study was inadequate. Now, also on that point, at FER 459 and 460 as well as 462, they conceded on summary judgment that they continued to violate the statute. They conceded for purposes of that motion that wasn't litigated. Final point, you asked for the site earlier with respect to where this Beeman was brought to the attention of the district court. That's at SER 3. And their argument is basically as follows. While Beeman came down and Beeman confirmed that she was right, so you should have told her that you had an — your argument basically got better. It's akin to basically saying in this Court, if I make an argument, I've preserved the argument. The fact that there's a later case, if I don't file a notice of supplemental authority based upon a new case, I don't waive the argument. The argument has been made. It was just a confirmation of what she had already decided. Unless the Court has any questions, I'm over my time. Thank you. Thank you to both counsel for your arguments.
judges: D.W. Nelson, Rawlinson, Bea